UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In Re

PATRICIA L. ROWLENSON                                     Case No. 04-12302-MAM-13
    Debtor.

**ORDER ON OBJECTIONS TO CLAIMS**

Christopher Kern, Attorney for Debtor, Mobile, AL
Lionel Williams, Attorney for Kenneth and Karen Flowers, Mobile, AL

This case is before the Court on the debtor's objections to claims 5, 6, 7, and 8. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court has the authority to enter a final order. For the reasons indicated below, the Court is sustaining in part and overruling in part the objections by the debtor to claims number five, six, and seven, and the Court is overruling the debtor's objection to claim eight.

FACTS

On June 30, 2000, the debtor, Patricia Rowlenson, entered into a lease and purchase agreement with Kenneth and Karen Flowers, whereby the debtor leased a daycare facility and purchased the daycare's equipment, inventory, and supplies. Under the agreement, Rowlenson rented the property "situated at 16147 Woodpecker Road, Silverhill, Baldwin County, Alabama." The leased property was the Flowers former home, which they had converted into a daycare. Prior to leasing the property to Rowlenson, Mrs. Flowers had operated the facility as an ongoing daycare.

The daycare lease stated that the property was "to be used only as a child care center and in accordance with uses normally incident thereto and for no other purpose." The lease agreement was

-1-

to run from July 1, 2000, until June 30, 2005, with $1,000 monthly payments paid to the Flowers by the first of each month beginning on July 1, 2000. The lease provided that Rowlenson would pay a late fee of 10% of the monthly payment ($100) for each monthly payment that was not paid within 5 days after its due date. The lease required Rowlenson to maintain property and liability insurance on the premises, as well as pay all real estate and personal taxes on the premises during the lease. The maintenance section of the lease stated that the "[l]essee has the sole responsibility to maintain the [p]remises in good order and repair at all times during the term of this [l]ease." Likewise, the waste and nuisance section states that the "[l]essee shall not commit, or suffer to be committed, any waste on the leased premises. . ." The lease further stated that the lessor would have access to the leased premises, "subject to the lessee's consent (which shall not be unreasonably withheld)," to make inspections, provide necessary services, or show the unit to prospective buyers, mortgagees, tenants or workers. The lease also states that "in the event lessor or lessee breaches any of the terms of this agreement whereby the party not in default employs attorneys to protect or enforce its rights. . . and prevails, then the defaulting party agrees to pay the other party reasonable attorney's fees so incurred by such other party."

The parties also entered into a purchase agreement on June 30, 2000, in which the Flowers sold to Rowlenson "all equipment, inventory and supplies located in that childcare business at 16147 Woodpecker Road, Silverhill, Baldwin County, Alabama" for the price of $75,000. Under the sale agreement, Rowlenson was to pay a $20,000 down payment at the time she received her disbursement from her 401-K plan or by August 1, 2000, whichever occurred first, with the remaining $55,000 plus interest to be paid to the Flowers in regular monthly installment payments of $1,143.77 beginning on August 1, 2000 and ending June 1, 2005. As security for the purchase, Rowlenson granted the Flowers a security interest in all the equipment, inventory and supplies located in the daycare.

On July 1, 2000, Ms. Rowlenson took over the leased premises and began operating the daycare. Although Rowlenson was supposed to pay the $20,000 down payment on or before August 1, 2000, she did not make the payment until October or November 2000. Rowlenson continued to operate the daycare on the leased premises until September 2003, at which time she vacated the property and tendered the premises back to the Flowers. According to Rowlenson, she vacated the premises because of problems with the Flowers over property access and property interference. Rowlenson claims she surrendered the property because she was denied access to a garage on the premises, that she contends was part of the leased premises. The property interference Rowlenson complained of resulted from Mrs. Flowers placing "for sale" signs on the leased property and showing the property to real estate agents and/or potential buyers during the business hours of Rowlenson's daycare business without Rowlenson's consent.

On November 11, 2003, Rowlenson filed a Chapter 13 bankruptcy. That case was dismissed with a 90 day injunction on January 20, 2004, for failure to make payments. On April 20, 2004, Rowlenson filed the present Chapter 13 bankruptcy case. The debtor filed a plan which would pay unsecured creditors a 100% distribution on all allowed claims. The Flowers have filed five proofs of claims in the case, one of which amended and superceded a previous claim. Thus there are four claims at issue. These claims are numbers 5, 6, 7, and 8 on the case claims register[1]. All of these claims stem from the daycare and the agreements surrounding its lease and purchase. Rowlenson has objected to all of the Flowers' claims. The Court will address each claim individually.

---

[1] Claim 8 amended and superceded claim 4. Thus only claims 5, 6, 7, and 8 are at issue.

## LAW

A proof of claim is prima facie evidence of the claim's validity and amount. Fed.R.Bankr. P. 3001(f). A proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). The party objecting to the claim bears the initial burden of presenting sufficient evidence to overcome the presumed validity and amount of the claim. *In re Smith*, 249 B.R. 328, 332-33 (Bankr. S.D. Ga. 2000); *In re Challa*, 186 B.R. 750, 754 (Bankr. M.D. Fla. 1995). Although the objecting party's burden is easily satisfied, affirmative proof must be offered to overcome the presumed validity of the claim. *Smith*, 249 B.R. at 333. If the objecting party overcomes the prima facie validity of the claim, then the burden shifts to the claimant to prove its claim by a preponderance of the evidence. *Id.*

By objecting to the Flowers' claims, Rowlenson bears the burden of presenting sufficient evidence to place each of the claims at issue. *Id.* The Court finds that Rowlenson's testimonial evidence was sufficient to met her burden of putting each of the claims at issue. Thus, the Flowers have the burden to prove their claims by a preponderance of the evidence. The Court will address each of the claims in turn.

## CLAIM FIVE

Claim five was filed by the Flowers in the amount of $17,819.17, for "waste and associated damages" inflicted on the leased premises prior to Rowlenson's bankruptcy. The Flowers claim Rowlenson committed waste on the property and surrendered the property in a deplorable condition, thus failing to maintain the property "in good order and repair"as required by the lease. In support of this claim the Flowers have introduced into evidence numerous pictures of the daycare facility both before and after the property was leased to the debtor. The "before" photos are 4 x 6 pictures, which for the most part depict children involved in various activities at the daycare. Parts of the daycare are

Case 04-12302   Doc 100   Filed 04/11/05   Entered 04/11/05 15:16:05   Desc Main
Document      Page 4 of 14

visible in the background of these photos. The Flowers rely on these background shots to show the lack of damage to the facility before they leased the daycare to the debtor. The "after" photos are enlarged 8 x 10 photos targeted on specific damaged areas of the daycare. These enlarged pictures show among other things, scuffed and damaged tile floors, areas with mold and mildew, mildew and water stains on the floor under some carpeting and on the baseboards, water marks on the ceiling, damage to eaves of the building, wood rot, and chipped exterior paint.

Mrs. Flowers testified that none of the damage depicted in the large photos was present when she leased the premises to Rowlenson. She also testified that the daycare was in excellent overall condition when the premises was leased. Furthermore, the Flowers and their witness testified the tile floors in the daycare were in excellent condition before the lease, and that they stripped and waxed the floors once a month before they leased the daycare. According to the Flowers they informed the debtor about the necessity of stripping and waxing the floors, and left a bucket of floor wax at the daycare for the debtor to use. After the debtor surrendered the property, the Flowers found the same bucket of wax unused.

The debtor contends that most of the damage shown in the photographs existed before the lease. The debtor further testified that except for normal wear and tear, she surrendered the leased premises in basically the same condition as she got it. Upon viewing the Flowers' photo exhibits, the debtor's witness, Anita Powis, testified that except for some chipped paint, the daycare was surrendered to the Flowers in basically the same condition as when it was first leased. The debtor maintains that she regularly cleaned the daycare and performed basic maintenance on the property. She also testified that she did wax the floors during her occupation of the premises. When asked about the photograph depicting the scratched and damaged tile, the debtor testified that the picture made the floors look worse

that they really were, and that if stripped and waxed the floor would be in good condition. As for the wood rot depicted, the debtor stated that she did not cause this damage, and she supported her position by introducing three photographs showing similar wood rot on the garage on the premises, to which Rowlenson was not given access. Two eaves of the daycare were also damaged. The Flowers contend this damage was caused by overgrown bushes and a pecan tree which the debtor failed to maintain. The Flowers also contend the debtor failed to properly maintain the driveway, which resulted in many large ruts and bumps, and a loss of limestone. The Flowers argue that the pictures of bugs, cobwebs, mold, mildew, and water stains along with the damaged floors, damaged eaves, chipped paint, and deteriorated driveway prove that the debtor failed to meet her requirement under the lease to maintain the premises in good order and repair.

Under Alabama law, if leased property is damaged or not properly maintained according to the lease agreement, the proper measure of damages is the cost of repairs to return the property to the condition contemplated by the lease. *Windsor v. Collins*, 505 So.2d 1205 (Ala. 1987); *Thacker v. Tabor*, 521 So.2d 66 (Ala. Civ. App. 1988). Additionally, Alabama courts will only award damages if there is evidence tending to show the extent of damages as a matter of just and reasonable inference. JENELLE MIMS MARSH, CHARLES W. GAMBLE, *Alabama Law of Damages* § 7:1 (4th ed. 2004). Where it is reasonably certain that damage has occurred, mere uncertainty as to the amount will not prevent recovery. *Ricwil, Inc. v. S.L. Pappas & Co., Inc.*, 599 So.2d 1126, 1132 (Ala. 1992). Based on the photographs and the Flowers' testimony, the Court is reasonably certain that some damage has occurred and that the property was not properly maintained as required by the lease. However, the Court does not believe the Flowers have presented sufficient evidence to justify the full claim amount sought by claim five.

Although the Flowers testified they reached their claim amount by taking the average of two repair estimates, these estimates were not admitted into evidence, and thus the Court does have an itemized list of all damages claimed and the corresponding cost of each repair. Even though the enlarged photos submitted by the Flowers do show some degree of damage to the premises, the Flowers have not sufficiently proven that none of these conditions existed prior to the lease. The "before" pictures provide little help in that regard. The "before" photos are not targeted on specific areas as the "after" pictures are, nor are they enlarged, and in most instances, there are not "before" pictures of the same areas depicted in the "after" pictures. Furthermore, except for one dated photo, there was no evidence presented showing how long before the beginning of the lease these "before" pictures were taken. The Court does not know whether these photos were taken when the daycare was first opened by the Flowers or whether they were taken shortly before the lease. However, after reviewing all the evidence, the Court is reasonably certain some damage occurred to the leased premises which the debtor is responsible for. Likewise, the photos do show mold, mildew, water stains, bugs and cobwebs that show a lack of proper maintenance. Based on the evidence presented, the Court will allow claim five in the amount of $9,000.00, approximately one half the amount sought. The Court selected this damage award based upon the fact that wood rot occurred on the garage that the Flowers used and maintained; therefore the same damage on the house must not be improper maintenance. The cost of the flooring, eaves, driveway, and general maintenance are covered by the $9,000 amount, since the Court is convinced that some of these items are expensive repairs.

CLAIM SIX

Claim number six was filed by the Flowers in the amount of $9,434.97 for the debtor's liability under the lease until she filed bankruptcy in April 2004. The amount claimed is for unpaid rent from

-7-

Case 04-12302   Doc 100   Filed 04/11/05   Entered 04/11/05 15:16:05   Desc Main
Document      Page 7 of 14

October 2003 through April 2004 ($7,000), late fees for each of those seven months ($700), property taxes ($570.73), and insurance ($1,164.24) owed under the lease. The debtor does not dispute these calculations, but asserts that she does not owe the full rent amount because she was not given full access to the leased property by the Flowers. Debtor claims the garage on the premises was part of the lease, and that the Flowers would not allow her access to the garage. Without full access, the debtor denies full liability.

Although Rowlenson never sued the Flowers to gain access to the garage, she testified that she personally asked Mrs. Flowers to allow her access to the garage, and that she had her attorney write Mrs. Flowers a letter regarding access to the garage, but she was never allowed any access to it. The debtor testified that she believed the garage was included in the lease, and without access to the garage she should not owe the full lease amount. The debtor further testified she valued the lease of the garage at $300 per month considering she paid the taxes on the property.

The Flowers admit Rowlenson was denied access to the garage, but contend it was not part of the leased premises, and that Rowlenson knew from the outset it was not included in the lease. Mrs. Flowers testified that she made it clear to the debtor the garage was not included in the lease before the lease agreement was entered into. Further, the Flowers argue that because the garage is not even finished on the inside, the debtor could not have used it for the daycare, nor could it be worth $300 per month.

Because the parties cannot agree whether the garage was part of the lease, the Court will look to the language of the lease. The lease states that it is for "property...situated at 16147 Woodpecker Road, Silverhill, Baldwin County, Alabama, to be used only as a child care center and in accordance with uses normally incident thereto and for no other purpose." The garage, along with the main daycare

Case 04-12302    Doc 100    Filed 04/11/05    Entered 04/11/05 15:16:05    Desc Main
Document      Page 8 of 14

facility, is situated at 16147 Woodpecker Road, Silverhill, Baldwin County, Alabama, and the lease does not except the garage from the leased premises. Because the language of the lease is not ambiguous, the Court finds that according to the language of the lease, the garage was part of the leased premises. That said, it has not been proven and the Court is not convinced that access to an unfinished garage is worth $300 per month when the total lease payments were $1000 per month considering the garage is not finished out on the inside and is much smaller than the daycare center itself. But even if the garage is not finished out on the inside, the debtor could have used it for extra storage or some other function normally incident to running a daycare. Therefore the Court finds that an appropriate monthly value for the garage is $100 per month, and since the debtor was denied access to this portion, the Court reduces the rent owed under claim six by $100 per month for the seven months prepetition and reduces the late fee by $10 per month for the seven months. Thus Claim seven is reduced and allowed in the amount of $8,664.97.

## CLAIM SEVEN

The Flowers filed claim seven in the amount of $14,002.20 for lease rejection damages. Rowlenson objected to claim seven because she does not believe she owes that amount since the Flowers sold the daycare facility in July or August 2004, which was approximately four months after she filed for bankruptcy and about 13 months after she vacated the property.

Section 502(b)(6) of the Bankruptcy Code governs lease rejection damages in bankruptcy. 11 U.S.C. § 502(b)(6). That section states that the Court should determine the amount of a claim,

> (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds–
> (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of–
> (i) the date of the filing of the petition; and

-9-

Case 04-12302    Doc 100    Filed 04/11/05    Entered 04/11/05 15:16:05    Desc Main
Document    Page 9 of 14

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

11 U.S.C. § 502(b)(6). "Section 502(b)(6) was designed to compensate a landlord for his loss due to breach of a lease, yet preclude a claim so large as to prevent other general unsecured creditors from recovering a reasonable dividend from the estate." *In re Clements*, 185 B.R. 895, 901 (Bankr. M.D. Fla. 1995) (*quoting In re Thompson*, 116 B.R. 610, 612 (Bankr. S.D. Ohio 1990).

Section 502(b)(6) requires that the Court determine the amount of the claim by adding together any unpaid rent due under the lease, either on the petition filing date, or the date the lessee surrendered, whichever is earlier. That sum is then added to the greater of the rent due for the remainder of the lease, for either one year or 15% of the remaining lease term, not to exceed three years, after either the petition date or the date of surrender. The debtor vacated the premises sometime in September 2003, and that surrender became effective on October 1, 2003. Thus the surrender date will be used for the first calculation because it is earlier than the petition date. Because the debtor was current on her rent when she surrendered the premises, there will not be any additional amount added under § 502(b)(6)(B), and thus the amount reached under the § 502(b)(6)(A) calculations will be the total amount of the allowed claim.

The first step in calculating the amount due under § 502(b)(6)(A), is to determine which is greater, 15% of the rent reserved for the remainder of the lease, or the rent reserved for one year. In one year from the surrender, the debtor would owe 12 rent payments of $900 each, resulting in a $10,800 claim[2]. However, the Flowers have added to their claim monthly charges for taxes and insurance which

---

[2]The monthly rent payments are calculated at $900 per month instead of $1,000 per month based on the Court's ruling on claim six above.

-10-

were owed under the lease. Whether these added costs can be added to the rent payment for a claim under § 502(b)(6) is another issue for the Court to determine.

The Code speaks in terms of the lessor's "damages," but when setting out the calculation to be used, it simply uses the word "rent" and does not speak in terms of other damages. *See* 11 U.S.C. § 502(b)(6). However, the lease at issue in this case specifically made the lessee responsible for paying the taxes and insurance on the property. The legislative history of § 502(b)(6) is instructive because it states that the landlord's "allowed claim is for his *total damages*, as limited by this paragraph . . ." H.R. 95-595 to accompany H.R. 8200, 95th Cong. 1st Sess. (1977) pp. 353-355. (Emphasis added). Furthermore, case law supports the position that the landlord's claim is not limited to only the rent under the lease. *In re Clements*, 185 B.R. 895 (Bankr. M.D. Fla. 1995); *see also In re Storage Technology, Corp.*, 77 B.R. 824 (Bankr. D. Colo. 1986) ("[t]he damage cap [of § 502(b)(6)] applies to all damages, ... [t]hus, as a matter of law, the actual damage claim of the [landlord] for termination of the lease, whether for non-payment of rent, taxes, costs, attorney's fees, or other financial covenants, are limited by the damage cap in § 502(b)(6)(A)").

Based on the legislative history and case law, the Court is persuaded that the taxes and insurance payments required by the lease should be included in the "rent reserved" by the lease. Accordingly, the amount due under the lease in the year following the debtor's surrender of the premises is the total of the 12 months rent ($10,800) plus 12 monthly tax payments of $26.83 per month ($321.96), plus 12 monthly insurance payments of $97.02 per month ($1,164.24), which equals $12,286.20. In comparison, 15% of the amount of "rent reserved" due under the remainder of the lease would be $3,225.13.[3] Because the one year total is greater than 15% of the remainder, the landlord is entitled to

---

[3] The debtor effectively surrendered the premises 21 months before the lease was to expire. Thus damages suffered by the lessors as a result of the termination of the lease would be

a claim in the amount of $12,286.20, plus any unpaid rent due under the lease at the time of surrender. Since the debtor was current when she surrendered the premises, claim seven is allowed in the amount of $12,286.20.

CLAIM EIGHT

The Flowers filed claim eight in the amount of $32,865.65, based on Rowlenson's promisssory note obligation to the Flowers which includes an attorney's fee provision. The Flowers had originally filed claim four in the amount of $26,827.27 for the promissory note obligation, but because the Flowers' incurred additional legal fees and costs since they filed claim four, they filed claim eight to amend and supercede it. Rowlenson did not object to her liability under the promissory note itself, but objects to claim eight because it includes postpetition attorney's fees, which she argues are not allowed. The parties have stipulated that the prepetition attorney's fees can be included in the claim, and that the claim is unsecured.

There is a split of authority as to whether an unsecured creditor is entitled to payment of postpetition attorney's fees as part of its unsecured claim. The majority of the courts have held that unsecured creditors are not entitled to collect postpetition attorney's fees, even if the contract between the parties allows the fees. *See, In re Hedged-Investments Associates, Inc.*, 293 B.R. 523 (D. Colo. 2003); *In re Loewen Group Intern., Inc.*, 274 B.R. 427 (Bankr. D. Del. 2002); *In re Sakowitz, Inc.*, 110 B.R. 268 (Bankr. S.D. Tex. 1989). A significant minority of courts have concluded that there is nothing in the Code that prevents an unsecured creditor from asserting an unsecured claim for postpetition attorney's fees to which the creditor has a contractual right. *See, In re New Power Co.*, 313 B.R. 496

---

equal to 21 months rent at $900 per month, plus property tax and insurance payments for the 21 months, which were $26.83 per month and $97.02 per month respectively. All totaled, the sum owed under the remainder of the lease would equal $21,500.85. Fifteen percent of that total equals $3,225.13.

(Bankr. N.D. Ga. 2004); *In re Fast*, 318 B.R. 183 (Bankr. D. Colo. 2004); *In re United Merchants & Mfrs., Inc.*, 647 F.2d 134 (2d Cir. 1982); *In re Byrd*, 192 B.R. 917 (Bankr. E.D. Tenn. 1997); *Matter of 268 Ltd.*, 789 F.2d 647 (9th Cir. 1986).

The Court is persuaded by the reasoning in *New Power*, at least in a 100% case like this one. The *New Power* case involved a Chapter 11 bankruptcy wherein a creditor filed a claim for allowance of attorney's fees and cost as an administrative expenses, or, in the alternative, as a general unsecured claim. The bankruptcy court held that postpetition attorney's fees may be included in a claim if the parties' contract provides for the fees. 313 B.R. at 506. Relying on *New Power's* analysis and rationale, which is incorporated by reference, the Court is persuaded that an unsecured creditor is not completely and unconditionally precluded from asserting a claim for postpetition attorney's fees if it is provided for by contract and the creditors will be paid 100% of their claims. Like the *Fast* case cited above, under the unusual facts and circumstances of this case, the Court will allow the postpetition attorney's fees. Claim eight is allowed in the amount of $32,865.65. This decision is based in part on the fact that this is a solvent case with a 100% payout to all creditors. Moreover, this case involves a debtor that did not fully disclose a major asset and a persistent creditor whose consistent involvement has progressed the case and helped the estate become solvent. If the circumstances of this case were different or if this issue is raised in another case with different circumstances, the result might not be the same.

THEREFORE IT IS ORDERED, that the debtor's objections to claims five, six, and seven are SUSTAINED IN PART and OVERRULED IN PART. It is FURTHER ORDERED that the debtor's objection to claim eight is OVERRULED. It is FURTHER ORDERED that claim five is allowed in

the amount of $9,000.00; claim six is allowed in the amount of $8,664.97; claim seven is allowed in the amount of $12,286.20; and claim eight is allowed in the amount of $32,865.65.

Dated:   April 11, 2005

_____
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE